# In the United States Bankruptcy Court for the Southern District of Georgia
## Savannah Division

| | |
|---|---|
| In the matter of: ) | |
| ) | Adversary Proceeding |
| CHARLES D. WARREN, JR., ) | |
| MELISSA S. WARREN, ) | Number <u>13-4015</u> |
| (Chapter 13 Case Number <u>08-41518</u>) ) | |
| ) | |
| *Debtors* ) | |
| ) | |
| ) | **FILED** |
| ) | Lucinda B. Rauback, Clerk |
| CHARLES D. WARREN, JR., ) | United States Bankruptcy Court |
| MELISSA S. WARREN, ) | Savannah, Georgia |
| ) | By lbarnard at 9:55 am, Oct 04, 2013 |
| *Plaintiffs* ) | |
| ) | |
| v. ) | |
| ) | |
| PNC BANK, INC., ) | |
| and its subsidiaries and assigns, ) | |
| ) | |
| *Defendant* ) | |

## OPINION AND ORDER ON MOTION FOR SUMMARY JUDGMENT

Charles D. Warren, Jr. and Melissa S. Warren ("Debtors") filed their Chapter 13 case on August 20, 2008. Dckt. No. 1.[1] On February 26, 2013, Debtors initiated this adversary proceeding by filing a Complaint to Determine Dischargeability of debt. A.P. Dckt. No. 1. Currently pending before the Court is Defendant PNC Bank, Inc.'s ("PNC")

---

[1] For this Order, citations to the main bankruptcy case [08-41518] will appear as "Dckt. No. ___"; citations to Plaintiff's Adversary Proceeding [13-4015] will appear as "A.P. Dckt. No. ___".

Motion for Judgment on the Pleadings or for Summary Judgment. A.P. Dckt. No. 12.

## FINDINGS OF FACT

Debtors own residential property located in Chatham County, Georgia (the "Property"). Dckt. No. 1. The Property is encumbered by two security deeds held by PNC as successor by merger to the original owner National City Mortgage ("National City"). Dckt. Nos. 1, 95. In Schedule D of the petition, Debtors scheduled National City's first mortgage in the amount of $342,000.00 and its second mortgage at $147,000.00, $39,000.00 of which was denominated as unsecured. Dckt. No. 1. Debtors' Chapter 13 plan (the "Plan") filed on August 20, 2008, and confirmed on October 30, 2008, scheduled Debtors to pay National City $1,188.00 per month on the secured amount of the second mortgage. Dckt. Nos. 4, 25.

Debtors filed this Adversary Proceeding on February 26, 2013, some four years after confirmation, seeking to discharge the second lien. A.P. Dckt. No. 1. Debtors contend that the Property has declined in value from $450,000.00 to $330,000.00 leaving no equity to secure the second lien; therefore, the wholly unsecured debt is dischargeable in Chapter 13. *Id.*

PNC filed its Motion for Judgment on the Pleadings or for Summary Judgment on July 19, 2013. A.P. Dckt. No. 12. The Clerk of Court sent a Notice to Debtors regarding Plaintiff's Motion for Summary Judgment on July 22, 2013. A.P. Dckt. No. 13. This Notice stated in bold, capitalized text, "If you do not respond as directed in this notice,

the Court may enter a final judgment against you without a full trial or any other proceedings." *Id.* It also stated, "If you do not timely respond to this motion for summary judgment, the consequence may be that the Court will deem the motion unopposed, and the Court may enter judgment against you." *Id.*

Debtors did not file a response to PNC's Motion for Summary Judgment.

### CONCLUSIONS OF LAW

Federal Rule of Civil Procedure 56, made applicable to adversary proceedings by Bankruptcy Rule 7056, governs motions for summary judgment. The moving party bears the burden to prove that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.Proc. 56(a). "If a party fails . . . to properly address another party's assertion of fact . . . , the Court may: . . . (2) consider the fact undisputed for purposes of the motion; [or] (3) grant summary judgment if the motion and supporting materials–including the facts considered undisputed–show that the movant is entitled to it . . . ." Fed.R.Civ.Proc. 56(e).

Local Rule 56.1 of the United States District Court for the Southern District of Georgia, which has been made applicable to bankruptcy cases and proceedings by the "Uniformity of Practice" preamble to our local bankruptcy rules, states:

Upon any motion for summary judgment pursuant to Rule

56 of the Federal Rules of Civil Procedure, in addition to the brief, there shall be annexed to the motion a separate, short, concise statement of the material facts as to which it is contended there exists no genuine issue to be tried as well as any conclusions of law thereof. Each statement of material fact shall be supported by a citation to the record. *All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by a statement served by the opposing party. Response to a motion for summary judgment shall be made within twenty (20) days of service of the motion.*

S.D. Ga. LR 56 (emphasis added). Furthermore, as noted *supra*, the Notice of PNC's Summary Judgment Motion sent to Debtors clearly explained that the Debtors' failure to respond to PNC's Motion could result in the Court entering a judgment against them.

Debtors nonetheless failed to respond to PNC's Motion for Summary Judgment. All material facts set forth in PNC's statement, therefore, will be deemed admitted for purposes of this Order. Accordingly, this Court finds that no genuine dispute of material fact exists in this matter.

Summary judgment may only be granted, however, when the moving party, in addition to showing there is no genuine dispute of material fact, shows the movant is entitled to judgment as a matter of law. Fed.R.Civ.Proc. 56(a). Therefore, in the interest of justice I proceed to examine the record and assess whether a case has been made on the merits. I conclude that the allegations and facts in PNC's Motion are sufficient to support a grant of summary judgment.

PNC argues that a Chapter 13 plan, as a matter of law, may not be amended after confirmation to strip a residential lender's lien. 11 U.S.C. § 1322(b)(2) allows the Chapter 13 debtor's plan to "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence . . . ." The Supreme Court read the exception of § 1322(b)(2) broadly in Nobelman v. American Savings Bank, 508 U.S. 324, 328 (1993), focusing on the fact that what is prohibited is a modification of the lender's "rights," not merely the status of its claim. There, the debtors attempted to "strip down" the lender's secured claim in their plan to the fair market value of the residence and treat the remaining portion of the bank's claim as unsecured pursuant to 11 U.S.C. § 506(a).[2] Id. at 326. The Court held that the debtors "were correct in looking to § 506(a) for a judicial valuation of the collateral to determine the status of the bank's secured claim," but even accepting the debtors' valuation, "the bank is still the 'holder' of a 'secured claim,'" because the debtors' home retained some value as collateral. Id. at 328-29. Therefore, the bank's "rights" as the holder of a secured claim remained protected by § 1322(b) and were not necessarily "limited by the valuation of its secured claim." Id. at 329. The Court held that these "rights" are determined by the relevant mortgage instruments which are enforced under state law. Id.

---

[2]  (a)(1) An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim.

11 U.S.C. § 506(a)(1)

The Eleventh Circuit interpreted <u>Nobelman</u> as protecting only a lender's secured claim in the debtor's residence under § 1322(b) that retains some value as collateral and not a wholly unsecured claim. <u>Tanner v. FirstPlus Financial, Inc. (In re Tanner)</u>, 217 F.3d 1357 (11th Cir. 2000). It held "that the only reading of both sections 506(a) and 1322(b)(2) that renders neither a nullity is one that first requires bankruptcy courts to determine the value of the homestead lender's secured claim under section 506(a) and then to protect from modification any claim that is secured by any amount of collateral in the residence." *Id.* at 1360.

Here, Debtors listed the second lien on Schedule D of their petition in the amount of $147,000.00, $39,000.00 of which was denominated as unsecured. The Court confirmed Debtors' Plan to pay $1188.00 per month on the second lien based on Debtors' valuation. Because the second lien had value at confirmation, as <u>Tanner</u> held, the secured claim was protected from modification under § 1322(b) at confirmation.

This leaves the question of whether Debtors can strip the lien after confirmation via a modification of the Plan under § 1329(a) or reconsideration of the claim under § 502(j). 11 U.S.C. § 1329(a) states in relevant part:

> At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified . . . to –

> (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
>
> (2) extend or reduce the time for such payments;
>
> (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan; or
>
> (4) reduce amounts to be paid under the plan by the actual amount expended by the debtor to purchase health insurance . . . .

While courts are split on whether a plan can be modified to reclassify a secured creditor to unsecured status, in In re Coleman, 231 B.R. 397, 401 (Bankr. S.D. Ga. 1999)(Davis, J.), this Court adopted the majority view in finding that "[§ 1329(a)] does not expressly permit revaluation of collateral or reclassification of claims. Since Section 1329(a) is the gate through which all post-confirmation modifications must pass, the cramdown of a secured claim . . . is proscribed post-confirmation . . . ." *Accord* Chrysler Financial Corp. v. Nolan (In re Nolan), 232 F.3d 528, 532-33 (6th Cir. 2000). Moreover, "Valuation of secured claims is adjudicated by the order of confirmation. A debtor's confirmed plan is res judicata as to claims determination." Coleman, 231 B.R. at 399 (*quoting* In re Banks, 161 B.R. 375, 378 (Bankr. S.D. Miss. 1993)).

While Coleman dealt specifically with a secured lien on the debtor's car rather than his residence, other courts have applied the same reasoning in the real estate

⍟AO 72A
(Rev. 8/82)

7

context with facts similar to this case. *See* In re Rutt, 457 B.R. 97, 101 (Bankr. D. Colo. 2010)(denying the debtor's modification motion to strip off a second mortgage and treat the lender as an unsecured creditor two years after the Chapter 13 plan confirmation); In re Cruz, 253 B.R. 638, 644 (Bankr. D.N.J. 2000)("The proposed post-confirmation modification impermissibly changes the treatment of the second mortgagee's allowed secured claim to a general unsecured claim which would receive a dividend of zero. This type of modification is not contemplated by 11 U.S.C. § 1329."). Like these courts, I find the reasoning from Coleman regarding post-confirmation modification under § 1329(a) applicable in a real estate setting where the secured portion of a lender's claim in a debtor's residence is determined at confirmation.

It is important to acknowledge that my Southern District colleague, Judge John S. Dalis, allowed a deficiency claim arising from the post-confirmation surrender of collateral to be treated as unsecured pursuant to claim reconsideration provision § 502(j) rather than § 1329. In re Johnson, 247 B.R. 904 (Bankr. S.D. Ga. 1999)(Dalis J.). The court held that "Section 1329 deals with *plan* modification, not claim allowance." *Id.* at 908. 11 U.S.C. § 502(j) reads in relevant part: "A claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case." In Johnson, the court held that "[a]fter surrender of collateral, the deficiency portion of the claim is no longer actually secured . . . Any deficiency debt is therefore by definition unsecured." Johnson, 247 B.R. at 908. However, the facts of Johnson

are distinguishable from this case because Debtors still own their home. They are simply alleging that the Property has declined in value but have not surrendered the residence which might arguably lead to a deficiency claim.

Even if the facts here were similar to those in Johnson, I decline to follow the holding of that case for the following reasons. 11 U.S.C. § 502(j), which applies to all chapters in bankruptcy and allows reconsideration of claims according to the "equities of the case," is not an unlimited license to alter allowed claims. Before a court can reach the question of equity under § 502(j), it must first determine whether "cause" exists. In re Jones, 2000 WL 33673759, at *2 (Bankr. M.D.N.C. Aug. 28, 2000); In re Clark, 172 B.R. 701, 704-05 (Bankr. S.D. Ga. 1994)(Walker, J.); In re Durham, 329 B.R. 899, 903 (Bankr. M.D. Ga. 2005).

"Cause" is not expressly defined in the Bankruptcy Code, and courts have substantial discretion in deciding what constitutes "cause" when deciding whether to grant a motion for reconsideration under § 502(j). In re Gomez, 250 B.R. 397, 400-01 (Bankr. M.D. Fla. 1999). Still, "courts generally agree that Bankruptcy Rule 9024, which incorporates Fed.R.Civ.P. 60, sets forth the standards for reconsideration of claims and helps define "cause" under § 502(j)." In re Watkins, 240 B.R. 735, 739 (Bankr. C.D. Ill. 1999); *see also* In the Matter of Colley, 814 F.2d 1008, 1010 (5th Cir. 1987); Clark, 172 B.R. at 705; In re Coffman, 271 B.R. 492, 498 (Bankr. N.D. Tex. 2002); Amtech Lighting Servs. Co. v.

Payless Cashways (In re Payless Cashways, Inc.), 230 B.R. 120, 137 (8th Cir. BAP 1999)("In essence, then, Rule 60(b) helps to define the term 'cause' in § 502(j) and provides the applicable criteria for reconsidering claims." *(citing* Employment Sec. Div. v. W.F. Hurley, Inc. (In re W.F. Hurley, Inc.), 612 F.2d 392, 396 n. 4 (8th Cir. 1980))). Fed.R.Bankr.Proc. 9024 states in relevant part:

> [Rule 60] (b) On motion and just terms, the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence . . . ;
>
> (3) fraud . . . , misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

Although the debtors' situation in Johnson may have warranted reconsideration "according to the equities of the case," it did not satisfy the initial "for cause" inquiry under § 502(j). Because there was no evidence of mistake, excusable neglect, newly discovered evidence, fraud, or anything similar to the reasons enumerated in parts 1 through 5 of Rule 60(b), the debtors would have had to rely on equitable grounds under factor 6.

"Such relief, however, is considered extraordinary, and 'is only to be invoked upon a showing of exceptional circumstances.'" Coffman, 271 B.R. at 498 (*quoting* Nat'l Credit Union Admin. Bd. v. Gray, 1 F.3d 262, 266 (4th Cir. 1993)); *see also* Griffin v. Swim-Tech Corp., 722 F.2d 677, 680 (11th Cir. 1984)(*citing* Ackermann v. United States, 340 U.S. 193, 202 (1950)). The debtors in Coffman were not allowed to reclassify a secured claim under § 502(j) by surrendering their car because the mechanical issues the car was experiencing did not meet the exceptional circumstances test warranting Rule 60(b) relief. Coffman, 271 B.R. at 498.[3]

The Johnson facts are similar to Coffman in that, post-confirmation, the debtors changed their minds and sought to surrender collateral securing the creditor's claim rather than retain it. While the Johnson Court did not expressly address the "for cause"

---

[3] *See also* In re Guidant Corp. Implantable Defibrillators Products Liability Litigation, 496 F.3d 863, 868 (8th Cir. 2007)(holding that Counsel's ignorance of his case's dismissal because of his submission of an erroneous email address to the court was not an extraordinary circumstance warranting relief under Rule 60(b)(6)); In re Morningstar, 433 B.R. 714, 718-19 (Bankr. N.D. Ind. 2010)(denying the creditor's motion to reconsider the disallowance of a claim because its negligence in failing to respond to the Trustee's request for documentation regarding the claim was not an "exceptional circumstance" satisfying Rule 60(b)(6)); In re PT-1 Communications, Inc., 412 B.R. 85, 98 (Bankr. E.D.N.Y. 2009), *aff'd sub nom.* Universal Service Admin. Co. v. PT-1 Communications, Inc., 437 B.R. 766 (E.D.N.Y. 2010)("[Creditor's] argument that relief should be granted under Rule 60(b)(6) because the clerk did not provide notice of entry of the Claim Order must also be rejected. It has been held that the failure of the clerk's office to provide notice of entry does not provide grounds to grant relief under Rule 60(b)(1) on the basis of excusable neglect, a lower standard than the one embodied in Rule 60(b)(6)."); In re Tri-State Ethanol Co., LLC, 2009 WL 1079776 at *10 (Bankr. D.S.D. Apr. 21, 2009)(holding that the creditor did not point to any evidence in its motion for reconsideration filed over a year after a hearing on its claim that exceptional circumstances "denied it a full and fair opportunity to litigate [that] claim"). See In re Eads, 417 B.R. 728 (Bankr. E.D. Tex. 2009) for an example of when extraordinary circumstances warranted relief pursuant to Rule 60(b)(6). In that case the court erred in entering a default order prepared by the debtor's counsel sustaining a claim objection which actually voided the creditor's lien. *Id.* at 736. Extraordinary circumstances were present and grounds existed to vacate the default order under Rule 60(b)(6) because Bankruptcy Rule 7001(2) requires an adversary proceeding when challenging the validity of a lien. *Id.* at 743-44. *See also* In re Egan, 2002 WL 33939672, at *4 (Bankr. D. Idaho Nov. 08, 2002)(vacating the Order Disallowing Claim pursuant to a motion for reconsideration and a showing of cause under Rule 60(b)(6) because Trustee's objection to the proof of claim did not comply with the service provisions of Bankruptcy Rule 9014).

inquiry from § 502(j), I agree with the court in Coffman in that a debtor wishing to surrender collateral post-confirmation because of mechanical problems (or in the case of Johnson because debtors could no longer afford the payments) falls outside the scope of exceptional circumstances that may fit within the equitable bounds of Rule 60(b)(6). This is especially true given that the debtors had themselves valued the collateral for purposes of confirmation. Therefore, on the Johnson facts I would not find that "cause" exists to trigger a § 502(j) reconsideration.

More fundamentally, however, even assuming that "cause" exists and the issue of reconsideration of the claim is ripe, I conclude that determination of any change in secured status is constrained by the contours of 11 U.S.C. § 1329. Although decided in a different context, the Eleventh Circuit recognized the distinction between allowance of claims and determination of secured status in In re Welzel, 275 F.3d 1308 (11th Cir. 2001). The court clarified that § 502, not § 506 governs the allowance/disallowance of claims. *Id.* at 1318. "Once the bankruptcy court determines that a claim is allowable, § 506 deals with the entirely different, more narrow question of whether certain types of claims should be considered secured or unsecured." *Id.*

Thus, even if the allowed claim can be reconsidered under § 502(j), that process would only determine whether the claim can be disallowed for some reason. However, when a party contends that the secured status can be altered because of some post-

confirmation event, the issue is not allowance/disallowance. The allowed claim remains an allowed claim. Rather, the issue is determination of the secured status of that claim. The authority to do that is § 506 which is procedurally dependent on plan confirmation, not claims allowance. Under § 506 the value of the creditor's interest "shall be determined . . . in conjunction with any hearing . . . on a *plan* affecting such creditor's interest." 11 U.S.C. § 506(a)(1) (emphasis added). Confirmation of a plan is binding on all parties under § 1327(a).[4] If an existing confirmed plan values collateral, and thus the secured status of an allowed claim, that valuation cannot be changed absent a modification of the plan; and modification of a confirmed plan is narrowly limited by § 1329.

Therefore, Debtors' only remedy to alter the confirmed status of a secured claim is a plan modification, not reconsideration of a claim. § 1329 allows, *inter alia,* the debtor to reduce the amount payable to a secured creditor; however, this reduction is only "to the extent necessary to take account of any *payment* of such claim." 11 U.S.C. § 1329(a)(3) (emphasis added). It does not permit the retroactive revaluation of collateral when the confirmed plan provided for retention of collateral and the modified plan proposes surrender of the collateral. In that case the alteration of the secured claim (from a resale value to a foreclosure value) is the direct result from change in use of the collateral, depreciation, or perhaps even a change in market value due to economic conditions and has no connection whatsoever to "any payment." Chapter 13 simply does not allow this type of modification.

---

[4] "The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a).

In my view § 502(j) was never intended as an alternate means to modify a binding order of confirmation under factual circumstances such as this. Therefore, I decline to address the merits of a § 502(j) approach and adhere to my ruling in <u>Coleman</u>. PNC's second mortgage cannot be stripped because reclassification of the claim from secured to unsecured status post-confirmation is not permissible under § 1329(a).

I conclude that PNC has demonstrated it is entitled to judgement as a matter of law, and therefore, the Court will grant summary judgment in favor PNC. The treatment of PNC's second mortgage as proposed by Debtors' Plan and confirmed by this Court is non-dischargeable.

## ORDER

Pursuant to the foregoing, it is the ORDER of this Court that PNC's Motion for Summary Judgment is GRANTED. Debtors' net secured debt arising from PNC's second mortgage is excepted from discharge. Debtors are ORDERED to continue paying $1188.00 per month to PNC pursuant to Debtors' confirmed Chapter 13 Plan.

_____
Lamar W. Davis, Jr.
United States Bankruptcy Judge

Dated at Savannah, Georgia
This 3rd day of October, 2013.